UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFERY LOTTIE, | ) |
|       Petitioner, | ) |
| vs. | ) Case No. 4:18CV455 RLW |
| MICHELE BUCKNER,[1] | ) |
|       Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Jeffery Lottie's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus By a Person in State Custody (ECF No. 1). Because this Court has determined that Lottie's claims are inadequate on their face and the record affirmatively refutes the factual assertions upon which his claims are based, this Court decides this matter without an evidentiary hearing.[2]

---

[1] Petitioner has named Cindy Griffith as the respondent. The proper respondent for a prisoner currently in custody pursuant to a state court judgment is the state officer having custody of the applicant. *See* 28 U.S.C. § 2254, Rule 2(a). Michele Buckner, Warden of the South Central Correctional Center, is now the proper respondent.

[2] "A district court does not err in dismissing a movant's motion without a hearing if (1) the movant's 'allegations, accepted as true, would not entitle' the movant to relief, or '(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Buster v. U.S.*, 447 F.3d 1130, 1132 (8th Cir. 2006) (quoting *Sanders v. U.S.*, 341 F.3d 720, 722 (8th Cir. 2003)(citation and quotation marks omitted); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (in a §2254 case, holding that "[a] petitioner is not entitled to an evidentiary hearing . . . when his claims are . . . contentions that in the face of the record are wholly incredible.").

## BACKGROUND

The Missouri Court of Appeals summarized the relevant facts related to Lottie's conviction as follows:

> In the early morning hours of July 11, 2020, a rap group that included [Lottie] as a member was performing at a Wentzville nightclub called Palomino Nights. About two weeks earlier, [Lottie] and Justin Simms talked on the telephone and arranged for Simms to buy marijuana from [Lottie]. [Lottie] gave Simms directions to a location in the City of St. Louis where the sale was to take place. When Simms arrived at the location, a friend of [Lottie's] named Harvion Cameron robbed Simms at gunpoint. Simms held [Lottie] responsible for the robbery, and he went to Palomino Nights on July 11 to confront [Lottie].
>
> On July 11, Simms and [Lottie] got into an argument in the parking lot of the nightclub. [Lottie] got a gun from his car and fired multiple shots. Simms and two other people suffered gunshot wounds.
>
> A Wentzville police officer subsequently discovered four shell casings in the parking lot of the nightclub. Three of the casings were from a nine millimeter gun and the other casing was from a .40 caliber gun.
>
> Two nights after the nightclub shooting, on July 13, 2010, [Lottie] was at a motel in St. Charles County with Harvion Cameron (the man who robbed Simms at gunpoint about two weeks before the nightclub shooting) and Ron Rico Patton. Cameron called Daniel Brennan, and Cameron told Brennan to meet him at the Trails of Sunbrook apartment complex, which was next to the motel. Cameron, [Lottie], and Patton then left the motel room.
>
> Later that same evening, a witness saw two men standing next to a car in the parking lot of the apartment complex and heard a popping sound. She then saw the two men run from the car and speed away. Subsequently, a St. Charles police officer saw a car parked in the "suicide lane" of a road located about two miles north of the apartment complex. The car had its right turn signal on, and the officer approached the vehicle to investigate. The officer discovered that the driver, Brennan, had been shot. Brennan was able to tell the officer that he was shot outside the apartment complex after a man he didn't know approached him with a gun and demanded money. Brennan later died as a result of the gunshot wounds. Police discovered Patton's fingerprints on Brennan's car and a nine millimeter shell casing in the parking lot of the apartment complex.
>
> After receiving a tip on Brennan's murder, detectives searched the home of Harvion Cameron's grandparents and found two loaded nine millimeter handguns inside a floor joist. The nine millimeter shell casings found in the Palomino Nights parking lot were compared with the nine millimeter shell casing found outside the

>apartment complex, and the casings were determined to have been fired from the same gun. The shell casings were then compared to the nine millimeter handguns recovered from the house of Cameron's grandmother and were matched to one of those guns.
>
>Cameron was subsequently arrested and had Brennan's phone number in his wallet. [Lottie] was also arrested. While [Lottie] was incarcerated in St. Charles County jail, [Lottie] told his cellmate that Cameron had set up the robbery of Brennan and that [Lottie] and Patton approached Brennan as he sat in his car and demanded money. [Lottie] also told his cellmate that he knew there was going to be a robbery before he arrived at the apartment complex and that the gun Patton was holding discharged when everything went awry.

(ECF No. 10-6 at 2-3).

A jury found Lottie guilty of three counts of second-degree assault, five counts of armed criminal action, one count of unlawful possession of a firearm, one count of first-degree robbery, and one count of second-degree murder. The St. Charles County Circuit Court sentenced Lottie to two life imprisonments to run consecutively, to be served in the Missouri Department of Corrections. Lottie is currently serving this sentence at the South Central Correctional Center (SCCC). *See* https://web.mo.gov/doc/offSearchWeb/offenderInfoAction.do (last visited 1/27/21). The warden is Michele Buckner. *See* https://doc.mo.gov/node/546 (last visited 1/27/21).

In his petition, Lottie alleges five grounds for relief. In his first claim, Lottie assets that the trial court erred in permitting the prosecutor to join the charges arising from the nightclub shooting and the apartment complex. (ECF No. 1 at 5). Lottie's second claim maintains that the trial court erred in refusing to instruct the jury that Lottie was acting out of self-defense. (ECF No. 1 at 6). Lottie's third claim for relief alleges that trial counsel was ineffective for failing to call Dennis Holbrook as a defense witness. (ECF No. 1 at 14). In his fifth claim, Lottie maintains that appellate counsel was ineffective for failing to raise a claim that the trial court erred in allowing Lottie's cellmate, Jerry Harvey, to testify when Harvey was acting as an agent of the

State and interrogated Lottie, allegedly without providing *Miranda*[3] warnings. (ECF No. 1 at 14).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. §2254, a district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). "[A]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). "'A state court's decision is contrary to clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision and nevertheless arrives at a [different] result.'" *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003)). The Supreme Court has emphasized the phrase "Federal law, as determined by the Supreme Court," refers to "the holdings, as opposed to the dicta, of this Court's decisions," and has cautioned that §2254(d)(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "A [s]tate court unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

-4-

cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 791 (8th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

As to Petitioner's ineffective assistance of counsel claims, he "must show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Strong v. Roper,* 737 F.3d 506, 517 (8th Cir. 2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Under this standard, counsel must "'make reasonable investigations or ... make a reasonable decision that makes particular investigations unnecessary.'" *Id.* (quoting *Strickland,* 466 U.S. at 691). "'Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" *Id.* (quoting *Bucklew v. Luebbers,* 436 F.3d 1010, 1016 (8th Cir. 2006)). The Court's review is governed by both § 2254(d) and *Strickland,* meaning the Court must be "'twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel.'" *Strong,* 737 F.3d at 517 (quoting *Nooner v. Norris,* 402 F.3d 801, 808 (8th Cir.2005)); *see also Harrington v. Richter*, 562 U.S. 86, 105 (2011) (stressing the difficulty of overcoming both § 2254(d) and *Strickland* "when the two apply in tandem"); *Forrest v. Steele*, 764 F.3d 848, 853 (8th Cir. 2014) (same).

## DISCUSSION

### I. CLAIM ONE

In Claim One, Lottie alleges the trial court erred in permitting the prosecutor to join the charges arising from the nightclub shooting and the apartment complex shooting. (ECF No. 1 at 5). Lottie's claim that the state court improperly heard two claims in one action is not properly brought as a federal habeas action. Lottie claims that this ruling "violated Mr. Lottie's rights to due process and a fair trial, in that the two alleged instances were not part of the same transaction, a common scheme or plan, or of the same or similar character." (*Id.*) Lottie contends, without elaboration, that he was "substantially prejudiced by the failure to sever the offenses." (*Id.*)

"States have traditionally been afforded substantial latitude in fashioning their own rules of evidence and criminal procedure." *Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir. 1976) (citing *Manning v. Rose*, 507 F.2d 889, 892 (6th Cir. 1974); *see Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S.Ct. 1038, 1049-50, 35 L.Ed.2d 297, 312-15 (1973)). "The issues of joinder and severance are matters of state law." *Smith v. Bowersox*, No. 4:12 CV 2089 DDN, 2014 WL 1377810, at *5 (E.D. Mo. Apr. 8, 2014). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67 (1991); 28 U.S.C. § 2254. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Estelle,* 502 U.S. at 67–68. Rather, "[t]o obtain federal habeas corpus relief, the joinder "must actually render petitioner's state trial fundamentally unfair and hence, violative of due process." *Robinson v. Wyrick,* 735 F.2d 1091, 1094 (8th Cir.1984) (quoting *Tribbitt v. Wainwright,* 540 F.2d 840 (5th Cir .1976), *cert. denied,* 430 U.S. 910 (1977)). Lottie has not alleged any facts that support a finding that the joinder of the claims prosecuted against him rendered his trial fundamentally unfair or violative of due process. Rather, this claim is purely a procedural, state matter. The Court defers to the well-reasoned decision of the state court and denies this claim.

## II. CLAIM TWO

Lottie's second claim alleges that the trial court erred by refusing to instruct the jury regarding self-defense as to Count I. (ECF No. 1 at 6). Lottie claims that the trial court violated his right to "due process of law" by refusing to allow a self-defense instruction that the Lottie "had a reasonable belief that deadly force was necessary to protect himself against an immediate danger of serious physical injury from Justin and his cohorts." (ECF No. 1 at 6-7).

Lottie was acquitted of Count I. (ECF No. 10-3). Therefore, the Court finds Lottie has no case or controversy related to this alleged trial error. The Court denies this claim.

## III. CLAIM THREE

In his third claim, Lottie maintains that his trial counsel was ineffective for failing to call Dennis Holbrook as a defense witness to establish "1) the frightening circumstances Lottie found himself in around midnight on June 11, 2010 at a nightclub, and 2) in the nightclub's parking lot shortly thereafter[.]" (ECF No. 1 at 8). Lottie contends that he was fired upon by Justin Simms and Simms' friends just before he himself fired back. Lottie states that Holbrook's testimony would have provided a "viable defense of self-defense." (*Id.*)

Lottie raised this claim as part of his Rule 29.15 post-conviction motion. (ECF No. 10-8, pp. 107-110). The motion court denied this claim. (ECF No. 10-8, pp. 142-43). Lottie appealed that decision. (ECF No. 10-9). The Missouri Court of Appeals denied affirmed the lower court's decision and held that the trial court's actions were not deficient and, even if they were, Lottie was not prejudiced by counsel's failure to call Holbrook. (ECF No. 10-11, pp. 4-6). The Missouri Court of Appeals reasoned:

> To prevail on a claim of ineffective assistance of counsel for failure to call a witness, a movant must show "1) trial counsel knew or should have known of the existence of the witness; 2) the witness could be located through reasonable investigation; 3) the witness would testify; and 4) the witness's testimony would have produced a viable defense." *Williams v. State*, 386 S.W. 3d 750, 753 (Mo.

> banc 2012). Counsel's decision to not call a witness is presumptively trial strategy and cannot support a claim of ineffective assistance of counsel unless the movant clearly establishes otherwise. *Id.*
>
> The motion court expressly found that [Lottie] never told Trial Counsel about Holbrook as a potential witness. During the evidentiary hearing, Trial Counsel testified that while he discussed potential witnesses with [Lottie], Holbrook "wasn't a name that came up." Trial Counsel noted that he reviewed his notes of all potential witnesses that he discussed with [Lottie], but Holbrook's name was not included on the list. Although Holbrook was present during the trial, there is no indication that Trial Counsel was aware of Holbrook or should have known of Holbrook's presence because Holbrook never met with or talked to Trial Counsel. Holbrook testified during the evidentiary hearing that while he attended the trial, he never contacted Trial Counsel about the possibility of testifying in [Lottie's] defense. Without [Lottie] making any reference of Holbrook or Holbrook introducing himself to Trial Counsel, we cannot say Trial Counsel knew or should have known of Holbrooks' existence or potential testimony.
>
> Even assuming, *arguendo*, that Trial Counsel should have known of Holbrook as a potential witness, Trial Counsel's failure to call him as a witness was not ineffective because [Lottie] failed to show that Holbrook would have provided a viable defense. Specifically stressing Holbrook's admission of never talking to law enforcement or Trial Counsel throughout the investigation and trial, the motion court explicitly found Holbrook's testimony not to be credible. "At a post-conviction relief evidentiary hearing, the motion court determines the credibility of the witness and is free to believe or disbelieve the testimony of any witness." *Tate v. State*, 461 S.W. 3d 15, 24 (Mo. App. E.D. 2015). On appeal, we must defer to the motion court's determinations concerning credibility. *Id.* Thus, the motion court did not err in denying [Lottie's] motion for post-conviction relief because he failed to show that Trial Counsel knew or should have known of Holbrook or that Holbrook would have provided a viable defense if he testified. [Lottie's] first point is denied.

(ECF No. 10-11, pp. 4-6). The Court holds that the state court decision is reasonable and entitled to deference. The state court found that Lottie failed to mention Holbrook as a potential witness and he would not have been credible if he had been identified as a witness. Therefore, the Court defers to the decision of the state court and denies this habeas claim.

Moreover, even if the Court performed its own review of the record, the Court still would not find merit in Lottie's claim. "'Ordinarily, a defendant's failure to present some evidence from the uncalled witness regarding that witness's potential testimony ... would be fatal to an ineffective

--8--

assistance of counsel claim'." *Armstrong v. Kemna,* 534 F.3d 857, 867 (8th Cir. 2008) (quoting *Harrison v. Quarterman,* 496 F.3d 419, 428 (5th Cir. 2007). "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002) (quoting *Sayre v. Anderson,* 238 F.3d 631, 635-36 (5th Cir. 2001)). "[A] habeas court cannot even begin to apply *Strickland*'s standards to ... a [missing witness] claim unless and until the petitioner makes a 'specific, affirmative showing as to what the missing evidence or testimony would have been.' Without such a showing, it is ... nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *U.S. ex rel. Partee v. Lane,* 926 F.2d 694, 701 (7th Cir. 1991) (quoting *U.S. ex rel. McCall v. O'Grady,* 908 F.2d 170, 173 (7th Cir. 1990)). Lottie has failed to satisfy this showing and demonstrate precisely what Holbrook's purported testimony would have been and the effect it would have had on the claims against Lottie. Without this threshold showing, Lottie's habeas claim based upon a missing witness must fail.

### IV. CLAIM FOUR

Lottie argues that his appellate counsel was ineffective for failing to raise a hearsay claim on appeal. (ECF No. 1 at 10). Lottie states that his appellate counsel was ineffective for failing to argue that the trial court erroneously overruled Lottie's timely hearsay objections to testimony that Johnson either said "air it out" or "shoot that 'M Fur'" before Lottie shot his gun in a nightclub parking lot. (ECF No. 1 at 10).

Lottie raised this claim in his Rule 29.15 post-conviction motion. (ECF No. 10-8, pp. 55-66). The motion court denied this claim. (ECF No. 10-8, pp. 142-43). Lottie appealed this decision. (ECF No. 10-9). The Missouri Court of Appeals denied Lottie's claim, holding that that trial counsel's actions were not deficient and Lottie was not prejudiced. The Missouri Court

of Appeals found that the alleged hearsay met the excited utterance hearsay exception and was properly admitted into evidence. (ECF No. 10-11., pp. 6-8). The Missouri Court of Appeals reasoned:

> During trial, [Lottie] objected on hearsay grounds to the admission of two statements made by Johnson during the shooting, which were offered by two separate State witnesses. The trial court overruled the objections after the State noted the out-of-court statements were part of the *res gestae* of the crime. In his motion for post-conviction relief, [Lottie] claimed Trial Counsel was ineffective for failing to include this argument in his appeal. The motion court denied [Lottie's] motion for post-conviction relief and specifically found that "such statements were admissible as part of the res gestae of the shooting and as excited utterances." We agree.
>
> "A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value." *State v. Kemp*, 212 S.W. 3d 135, 146 (Mo. banc 2007). Excited utterances, however, are an exception to the hearsay rule. *Id.* An excited utterance "depends on a startling or unusual occurrence sufficient to overcome normal reflection such that the ensuing declaration is a spontaneous reaction to the startling event." *Id.* Excited utterances are considered more trustworthy because the statements are made spontaneously under the influence of events and are absent from thoughtful reflection. *Id.* Similarly, *res gestae* permits the admission of "acts, statements, occurrences and the circumstances forming part of the main transaction . . . where they precede the offense immediately or by a short interval of time and tend, as background information, to elucidate a main fact in issue." *State v. Williams*, 366 S.W. 3d 609, 624 (Mo. App. W.D. 2012).
>
> Here, Johnson's statements telling [Lottie] to "shoot that M Fur" or "air out the parking lot" was admissible as an excited utterance and as part of the *res gestae* of the shooting. [Lottie] testified that he saw the victim walk back to his car, open the vehicle's truck, and retrieve what he thought was a weapon. [Lottie] further testified that the victim fired a shot before he fired his gun. Such events involving the preparation or firing of weapons would constitute a startling or unusual occurrence sufficient to overcome normal reflection, and Johnson's responsive statements commanding [Lottie] to "shoot" or "air out" were a spontaneous reaction to the events.
>
> [Lottie] argues there was insufficient evidence to conclude Johnson's statements were made in response to a startling or unusual occurrence because it was not established that the statements were made before the initial gunshot. This argument, however, fails to acknowledge that seeing the victim walk to his car to get what [Lottie] and the State's witnesses believed to be a weapon also constitutes a startling occurrence. One of the State's witnesses testified that Johnson's statements occurred after he returned with something retrieved from his car.

> Thus, sufficient evidence was presented to support a finding that Johnson's statements were a spontaneous reaction to a startling event.
>
> Additionally, as Johnson's statements instructing [Lottie] to shoot occurred immediately before the shooting, the commands preceding the shooting were part of the actual event. As the instructions to shoot occurred so closely to the shooting, the statements provided background information on the event, explains why [Lottie] was prompted to fire his gun, and that [Lottie] acted in accordance with Johnson's statements. Thus, sufficient evidence was presented to support a finding that Johnson's statements were admissible under the *res gestae* exception to hearsay.
>
> [Lottie] failed to allege facts, unrefuted by the record, that Appellate Counsel did not demonstrate the customary skill and diligence that a reasonably competent attorney would display when rendering similar services under the existing circumstance. Thus, the motion court did not clearly err in denying his motion for post-conviction relief. [Lottie's] second point is denied.

(ECF No. 10-11, pp. 6-8). The Court defers to the state court's reasonable decision. The state court reasonably found that Johnson's statements constituted an excited utterance and, therefore, were admissible as an exception to the rule against hearsay. Likewise, the Court agrees that Johnson's statements provided reasonable background information as part of the background history and fit within the *res gestae* exception to the hearsay rule. Lottie has provided no evidence or plausible argument in contravention of the state court decision

The Court further notes that Lottie would not be entitled to relief even if this Court addressed the underlying argument. Hearsay is an out of court statement offered in evidence to prove the truth of the matter asserted. *See* Fed.R.Evid. 801; *see also State v. Robinson*, 535 S.W.3d 761, 766 (Mo. Ct. App. 2017) ("Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant."). "As a general rule, hearsay evidence is both undesirable and inadmissible because the maker of the offered statement is neither under oath, nor subject to cross-examination, nor subject to the fact-finder's ability to judge demeanor at the time the statement is made." *Robinson*, 535 S.W.3d at 766 (citing *State v. Robinson*, 484 S.W.2d 186, 189

–11–

(Mo. 1972); *State v. Mozee*, 112 S.W.3d 102, 107-08 (Mo. App. W.D. 2003); *State v. Howery*, 427 S.W.3d 236, 249 (Mo. App. E.D. 2014)). An exception to the rule against hearsay exists for excited utterances. *See* Fed.R.Evid. 802 and 803(2). "Excited utterances are statements relating to a startling event made while under the stress of excitement caused by the event." *United States v. Marrowbone*, 211 F.3d 452, 454 (8th Cir. 2000) (citing Fed.R.Evid. 803(2). "The rationale for this exception is that excited utterances are likely to be truthful because the stress from the event caused a spontaneous statement that was not the product of reflection and deliberation." *Marrowbone*, 211 F.3d 452, 454 (citing *Reed v. Thalacker,* 198 F.3d 1058, 1061 (8th Cir. 1999)); *see also State v. Robinson*, 535 S.W.3d 761, 766 (Mo. Ct. App. 2017) (citing *State v. Shoemaker*, 448 S.W.3d 853, 860 (Mo. App. W.D. 2014) ("Such exceptions are justified because their circumstances sufficiently guarantee the trustworthiness of the out-of-court statement.").

As to the underlying merits of the state court's decision, Lottie has not provided an explanation as to how the state court's determination was erroneous. As discussed, the state court found that Johnson's statements instructing Lottie to "shoot that M Fur" or "air out the parking lot" occurred immediately prior to the shooting and were part of the actual event. The state court found that such statements fit within the excited utterances exception to the hearsay rule. The Court finds that the state court's finding was reasonable, particularly because Lottie has not provided any argument to the contrary. Therefore, the Court denies Lottie's claim for relief under Claim Four.

## V. CLAIM FIVE

In his fifth claim, Lottie asserts that his appellate counsel was ineffective for failing to raise a claim that the trial court erred in allowing Jerry Harvey to testify. (ECF No. 1 at 14). Lottie states that appellate counsel should have argued that the trial court erred in overruling Lottie's motion to exclude State witness, Jerry Harvey. Mr. Harvey testified that, while Lottie and Harvey were cellmates, Lottie confessed to his participation in a botched robbery that resulted in Daniel Brennan's death on July 13, 2010.

> The Missouri Court of Appeals found:
>
> While [Lottie] filed a motion in limine to exclude Harvey's testimony before trial, that motion was denied and trial counsel did not object to Harvey's testimony during trial. A trial court's ruling on a motion in limine is an interlocutory ruling and preserves nothing for appeal. *State v. Clay*, 533 S.W. 3d 710, 719 (Mo. banc 2017). Thus, because trial counsel failed to object to Harvey's testimony at trial [Lottie's] claim was not preserved and would have been reviewed only for plain error under this Court's discretion. "[C]ounsel cannot be deemed ineffective for failing to raise an unpreserved claim of error on appeal." *Rutlin v. State*, 435 S.W. 3d 126, 134 (Mo. App. E.D. 2014). [Lottie] cannot show that this Court would have exercised its discretion and considered the unpreserved claim; therefore, [Lottie] cannot allege he was prejudiced by Appellate Counsel's failure to raise a claim on the admission of Harvey's testimony.
>
> Even assuming, *arguendo*, that Appellate Counsel had raised this claim on appeal, [Lottie] failed to allege facts, unrefuted by the record, demonstrating Appellate Counsel was ineffective in failing to appeal from the admission of Harvey's testimony. Specifically, [Lottie] failed to allege facts that Harvey was an instrument of the State or that he was intentionally placed in [Lottie's] cell to obtain information.
>
> Statements obtained during custodial interrogation, but made prior to a *Miranda* warning are inadmissible. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "An interrogation occurs when the police obtain a statement from a suspect by using 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are **reasonably likely to elicit an incriminating response** from the suspect." *State v. Wilson*, 169 S.W. 3d 870, 877 (Mo. App. W.D. 2005) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)) (emphasis added). Moreover, an interrogation under *Miranda* is not limited to actual questioning by the police, but also includes the "functional equivalent" of such questioning. *State v. Perkins*, 753 S.W. 2d 567, 571 (Mo. App. E.D. 1988) (citing *Innis*, 446 U.S. at 292)).

> [Lottie] contends that Harvey was a police instrumentality used to elicit incriminating responses from [Lottie] while he was in a custodial setting and without recitation of [Lottie's] *Miranda* rights because Harvey was placed in [Lottie's] jail cell to obtain incriminating statements. [Lottie's] argument is predicated on the assumption that law enforcement placed [Lottie] in the same cell as Harvey to get information; however, this claim was not sufficiently alleged by [Lottie] and is directly refuted by the record. The jail operations lieutenant testified that the department of corrections does not place prisoners in certain cells with the intent of using the prisoner as an informant, and that such a placement would be a violation of the department's classification policies. Further, the intake booking officer testified that inmates are never placed in cells together to obtain information, and instead the department "classif[ies] them by current charges that they are arrested on and [their 10-year] criminal history." Though Harvey was in jail for a traffic charge, the intake booking officer noted Harvey's extensive criminal record, including various drug charges, qualified him for his cell placement. The intake booking officer further stressed that [Lottie's] placement was solely based on this departmental criteria and that he did not know of anyone that asked Harvey to get information from [Lottie].
>
> Additionally, the timing of Harvey's cell placement schedule indicates that he was never moved to be placed into [Lottie's] cell. Printouts from the jail management system were admitted detailing the cell location schedule of [Lottie] and Harvey. Harvey remained in Unit L11B from July 18, 2010, through August 1, 2010. [Lottie] was not placed into Unit L11A until July 23, 2010, and left on July 27, 2010. Thus, because Harvey was placed in his cell several days before [Lottie's] placement in the jail—where he remained even after [Lottie] had left the jail—there is no indication that Harvey was specifically placed in [Lottie's] cell to obtain information.
>
> [Lottie's] argument overlooks this evidence and our standard of review, which requires us to review the record in the light most favorable to the judgment, accept all evidence and inferences supporting the judgment, and disregard all contrary evidence and inferences. [Lottie] instead conclusively claims Harvey was an agent of the police and failed to allege sufficient facts, unrefuted by the record, in support of his argument. Considering the lack of alleged factual and evidential support, we cannot say [Lottie] sufficiently demonstrated that Appellate Counsel was ineffective in failing to raise this issue on appeal. Thus, the motion court did not clearly err in denying [Lottie's] motion for post-conviction relief. [Lottie's] third point is denied.

(ECF No. 10-11 at 8-11). The Court holds that the state court decision is well-reasoned and entitled to deference. The evidence supports a finding that Harvey was not assigned a cell with Lottie as a government agent, but merely as part of the jail's random assignment process.

Lottie provided no support for his claims that Harvey was an instrument of the State or that his confession to Harvey was somehow coerced by the government. As a result, the Court defers to the reasonable decision of the state court.

In addition, even if the Court were review this point, Lottie still would not be entitled to habeas relief. In this case, Lottie contends that his cellmate, Harvey, was an instrument of the State and placed with Lottie to act as an informant. Lottie has provided no facts to support this claim. Instead, the State has provided ample support for its claim that Harvey was assigned randomly after considering an offender's criminal charges and sentence. Thus, the Court finds Lottie has been unable to refute the state court's findings by clear and convincing evidence. *See* 28 U.S.C. §2254(e). The Court denies Claim Five.

Accordingly,

**IT IS HEREBY ORDERED** that Jeffery D. Lottie's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus By a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834, 119 S. Ct. 89, 142 L. Ed. 2d 70 (1998).

A judgment dismissing this case is filed herewith.

Dated this 9th day of March, 2021.

                                                  RONNIE L. WHITE
                                                  UNITED STATES DISTRICT JUDGE